IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VANESSA MCKIBBAN, | § | |
| | § | |
| *Plaintiff,* | § | 5:23-CV-00182-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| MMK HOLDINGS, L.P., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE
AND ORDER DENYING MOTION TO EXCLUDE**

**To the Honorable United States District Judge Fred Biery:**

Before the Court are Defendant MMK Holdings, L.P.'s Motion for Summary Judgment, Dkt. No. 22, and Plaintiff Vanessa McKibban's Motion to Exclude Evidence Offered to Support Defendant's Motion for Summary Judgment, Dkt. No. 24. This Title VII sex-discrimination case is referred for resolution of pretrial matters. Dkt. No. 6. Authority to rule on the motion to exclude derives from 28 U.S.C. § 636(b)(1)(A). Authority to enter a report and recommendation on a motion for summary judgment stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons explained below, **IT IS ORDERED** that Plaintiff's Motion, Dkt. No. 24, is **DISMISSED AS MOOT,** and it is recommended that Defendant's Motion for Summary Judgment, Dkt. No. 22, be **DENIED.** The case is **ORDERED** returned to the District Court.

**Factual and Procedural Background**

This case concerns Plaintiff Vanessa McKibban's employment with Defendant MMK Holdings, L.P. ("Planet K") and subsequent termination. McKibban alleges she was wrongfully

1

terminated because she was pregnant. Dkt. No. 2-2 at 2. Evaluating the Motion for Summary Judgment, the Court must consider the evidence in a light most favorable to the non-movant, McKibban. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). With that standard in mind, the pertinent facts are as follows.

McKibban began working for Planet K in October 2018. *Id.* at 3. At the beginning of her employment, McKibban signed a safety pledge that referenced "the policies and procedures of Planet K regarding safety and the protection of life and property." *See* Dkt. No. 25 at 3. According to McKibban, Planet K never explained what the policies entailed. *See id.* Iyanna Preston, a Planet K manager who "supervises the managers of eight Planet K stores," testified that she was "unaware of any formal or informal written policies pertaining to safety-related topics." *Id.*; *see also* Dkt. No. 22-1 at 51, 319, 348.

McKibban's first role at Planet K was as a store clerk, but she was later promoted to Senior Key Holder. *Id.; see also* Dkt. No. 22 at 3. In June 2019, McKibban became a manager-in-training. *Id.* at 4; Dkt. No. 22 at 4. In December 2019, Planet K placed McKibban on manager probation because she was not "exceeding the expectations of a store manager." *Id.*; *see also* Dkt. No. 25-1 at 17. McKibban completed her probationary period on January 28, 2020, and returned to her prior role of Senior Key Holder. *Id.*; Dkt. No. 25-1 at 17.

Shortly before her probation ended, McKibban learned she was pregnant. Dkt. 22-1 at 108. On January 31, 2020, after completing her probationary period, McKibban told her supervisor, Martin Rodriguez, of her pregnancy. *Id.* at 9; Dkt. No. 22-1 at 270. On February 5, Rodriguez emailed his supervisor, Preston, to share that McKibban was pregnant and due in July. *Id.* Rodriguez also informed other Planet K managers and supervisors, including Planet K's owner Michael Kleinman, that McKibban was pregnant. *Id.*; Dkt. No. 22-1 at 259. According to

Rodriguez, Kleinman told Rodriguez, after learning of McKibban's pregnancy, that McKibban's last day would be March 31, 2020. *Id.*; Dkt. No. 22-1 at 275-277. Rodriguez recalled that in early February, he told McKibban, in person, that March 31 would be her last day. *Id.;* Dkt. No. 22-1 at 275. McKibban testified that Preston also called to tell her that her last day would be March 31, and when McKibban asked why, Preston said "she would discuss it when she got back" to the store. Dkt. No. 22-1 at 124. Later that night, Preston told McKibban in person that the reason for the timing of her last day was "because [Planet K] wanted [McKibban] to have time to prepare for the baby and – take care of [herself]." *Id.* On February 18, Rodriguez emailed Kleinman, Preston, and other managers: "[McKibban] is aware her last day is [] March 31st. She wasn't too happy and wanted to continue working closer to her due date July 15." *Id.;* Dkt. No. 25-1 at 19.

Sometime between February 18 and March 4, Rodriguez and Preston watched a surveillance video of McKibban sitting on a wooden counter in the Planet K store. Dkt. No. 22-1 at 287-89. During that same period, employees verbally complained to Rodriguez that McKibban had been "finding blind spots and laying [sic] down." *Id.* at 289-290. Rodriguez originally did not recall which employees made the complaints, but later remembered that the complaints came from Andrew Mitton and Jaymen Stevens. *Id.*; *see also* Dkt. No. 22-1 at 2.

The morning of March 4, 2020, Rodriguez emailed Kleinman, Preston, and other Planet K supervisors that "while watching cameras [McKibban was] seen sitting on the counter, employees have complained about her finding blind spots and laying [sic] down. She will be informed of her situation 03/04." *Id.* at 238.

Later that same day, Preston came to the Planet K store where McKibban worked and asked to meet with her. Dkt. No. 25 at 11; Dkt. No. 25-1 at 6. McKibban recorded the meeting

on her phone, mindful that "Planet K managers had already informed her that she would not be allowed to continue to work due to her pregnancy." Dkt. No. 25 at 11; *see also* Dkt. No. 22-1 at 123-124.

At the beginning of the meeting, Preston asked McKibban why she had been sitting on the wooden counter. Dkt. No. 25-1 at 6. McKibban responded that it was due to back pain, and that she continued to complete work tasks while sitting on the counter. *Id.* Preston then asked McKibban if she thought that was safe, "being pregnant." *Id.* After McKibban explained that it was easier for her to sit on the counter than on the ground, Preston told her: "That's a liability." *Id.* at 7. Preston continued, "I know I told you . . . . March 31st will be your last day. Today is your last day. Clock out now." *Id.* McKibban asked why, and Preston responded, "Multiple things. It's like you've already checked out in a sense . . . . we want you to have a . . . . happy, healthy pregnancy." *Id.*

McKibban said "[t]his makes no sense," and Preston responded that "multiple people" told Preston that McKibban was lying down on shift. *Id.* at 8. McKibban clarified that she "laid down one time on the ground because [her] back hurt" and got up after five minutes. *Id.* McKibban pointed out that another employee, Ashley, sat "all day on her phone, on the steps." *Id*. McKibban questioned whether Ashley would "get in trouble" for that but Preston refused to discuss Ashley with McKibban. *Id.*

McKibban then asked if that day, March 4, 2020, was her last day. *Id.* Preston answered that it was, and she again told McKibban that Planet K wanted McKibban to have a happy, healthy pregnancy. *Id.* After discussing logistical details, such as McKibban's final check, Preston told McKibban that she "should have been thinking . . . what [she was] going to do with the 31st already being . . ." her last day. *Id.* at 9. McKibban interrupted to inform Preston that

Rodriguez had previously told McKibban that she "could stay until the end of April." *Id.* at 10. Later, McKibban would testify in her deposition that the conversation with Rodriguez had taken place "probably a week before" the termination meeting, and that Rodriguez had told McKibban that he had spoken with another manager and secured permission for McKibban to stay "until the end of April." Dkt. No. 22-1 at 139. Preston also told McKibban at the March 4 termination meeting that Preston was unaware of the end-of-April arrangement, but that she would call Rodriguez and get back to McKibban. Dkt. No. 25-1 at 10.

The conversation then turned more explicitly to McKibban's pregnancy. Preston suggested that McKibban's husband get a job so that McKibban could "stay home with the kids." *Id.* McKibban asked how long she had to "stay gone" after giving birth. *Id.* at 11. Preston shared her personal experience of having taken three months off for maternity leave and told McKibban to "give it a couple months." *Id.* She further clarified, "[Kleinman]'s big on that . . . . normally he makes people wait a year." *Id.* Preston then told McKibban she believed Planet K would "bring [her] back" after the pregnancy. *Id.* at 11-12.

Thereafter, Preston returned to the topic of McKibban sitting on the wooden counter, noting that "the fact that [McKibban was] pregnant" made sitting on the counter a problem because she could hurt herself, and "more importantly, the baby." *Id.* at 12. Next, Preston told McKibban that she hoped to re-hire her before the end of 2020, after McKibban gave birth. *Id.*

Preston then advised McKibban to "change [her] living situation," "[m]ake [her] husband go to work," and "sit at home with the kids" because "[she was] pregnant." *Id.* at 13. After walking McKibban to her car, Preston told McKibban to call her any time, including if she needed a babysitter. *Id.* at 13-14.

The parties dispute whether McKibban violated company policy by sitting on the wooden counter and whether any company policy existed regarding the wooden counter. The parties also dispute whether any supervisor previously reprimanded McKibban for sitting on the wooden counter or lying down in the store before Preston raised the issue in the termination meeting with McKibban. *See generally* Dkt. Nos. 22, 25 & 29.

Attached to its motion for summary judgment, Planet K submitted the declaration of Doris Flores, who Planet K contends supervised McKibban during parts of her employment. *See* Dkt. No. 22 at 7. In her declaration, Flores stated under penalty of perjury that she observed McKibban sitting on the wooden counter at least three times. Dkt. No. 22-1 at 50. On at least one occasion, Flores told McKibban to get off the counter, and McKibban complied. *Id.* Flores also declared that she saw McKibban lying down on the floor in the store "purposefully out of surveillance camera view" at least twice. *Id.* At least one time after seeing McKibban on the floor, Flores told McKibban to return to her workstation—again, McKibban complied and got off the floor. *Id.* Flores declared that she also "coached several other employees besides McKibban to not sit on the wooden [counter]," and that the other employees also complied with Flores's requests and stopped sitting on the counter. *Id.* at 51.

McKibban's testimony controverts Flores's testimony in three ways. First, McKibban contends that Flores was never her supervisor but was instead a coworker holding the same position as McKibban. Dkt. No. 25 at 8; Dkt. No. 25-1. When McKibban was promoted to manager, Planet K transferred her to a different location and told her that "[Flores] would . . . [show her] what needed to be done." Dkt. No. 22-1 at 97. Additionally, McKibban contends that *she* supervised Flores at two distinct points in her employment. Dkt. No. 25-1. Second, McKibban denies that Flores ever coached or disciplined her. *Id.;* Dkt. No. 25 at 8. In her

deposition, McKibban testified that no employee of Planet K ever reprimanded her for sitting on counters until the March 4 termination meeting with Preston. Dkt. No. 22-1 at 119-120. Third, McKibban testified that she only lied down once, and she believed that she was allowed to do so because "there was no one in the store, and [she] was taking [her] break." *Id.* at 135. McKibban also testified that she lied down in that specific spot not because it was a surveillance camera blind spot but because "it had a little lattice . . . . [that] almost acted like a pillow." *Id.* at 136. In fact, McKibban believed that the camera "should have been able to see at least [her] head." *Id.*

In its present motion for summary judgment, Planet K seeks dismissal of McKibban's Title VII sex-discrimination claims on the grounds that McKibban "was terminated for a legitimate, nondiscriminatory reason" and McKibban has failed to establish a *prima facie* case of discrimination. Dkt. No. 22 at 5. McKibban responds that she has raised fact issues sufficient to overcome the motion for summary judgment, and that because she has presented direct evidence of discrimination Planet K bears the burden to show that it would have terminated her regardless of her pregnancy. *See generally* Dkt. No. 25.

McKibban also takes issue with Planet K's summary judgment evidence. In her motion to exclude, McKibban seeks to exclude the Flores declaration from the Court's consideration. *See generally* Dkt. No. 24. McKibban contends that Flores was untimely disclosed as a witness; Planet K disagrees. *See id.*; *see also* Dkt. Nos. 27 & 28.

## Legal Standards

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P.

56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Analysis of McKibban's Motion to Exclude

Plaintiff McKibban's motion to exclude Defendant's summary judgment evidence is moot. Flores's declaration, the evidence at issue in the motion to exclude, touches on disputed

fact issues. Dkt. No. 25 at 5. Thus, even if the declaration were properly before the Court, it at most would provide Planet K's version of disputed facts. This is because McKibban disputes that Flores was her supervisor and denies that Flores ever verbally coached her regarding the wooden counter. *Id.* McKibban likewise disputes that there was any policy prohibiting employees from sitting on the counter and contends that the first and only time Planet K reprimanded her for sitting on the counter was on the day of her termination. *Id.*

Moreover, the disputed facts in the Flores affidavit do not assist the Court's present inquiry. Planet K invokes Flores's affidavit to show that it "repeatedly coached" McKibban not to sit on the wooden counter or lie down because doing so violated Planet K's safety policies. Dkt. No. 29 at 5-6. Planet K asserts that this is sufficient evidence of "policy violations and repeated insubordination" that "would lead any reasonable jury to conclude that [Planet K] would have made the same decision absent the alleged discrimination." *Id.* at 6 (citing *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 477 (5th Cir. 2015), *as revised* (Feb. 3, 2015)). But McKibban's deposition and other evidence—for example, the recorded termination meeting in which McKibban stated she only lied down once—presents a contradictory fact scenario. *See* Dkt. No. 25-1 at 8; Dkt. No. 22-1 at 119-120. Viewing the evidence in the light most favorable to McKibban, the non-movant, the Flores declaration's litany of disputed facts does not assist Planet K at this stage. *See Rosado,* 5 F.3d at 123; *see also generally* Dkt. Nos. 22 & 25. Accordingly,

**IT IS ORDERED** that McKibban's Motion to Exclude, Dkt. No. 24, the Flores declaration from the summary judgment evidence is **DISMISSED AS MOOT.**

To the extent McKibban may seek, via the present motion, to exclude Flores as a witness altogether or at any future stage of the case, any such relief is **DENIED WITHOUT PREJUDICE.**

Additionally, the record reflects that all pretrial deadlines in this case have expired. Accordingly, having considered and acted upon all matters for which this case was referred, it is **ORDERED** that this case is **RETURNED** to the District Court for all purposes.

### Analysis of Planet K's Motion for Summary Judgment

McKibban has presented direct evidence of Planet K's discrimination due to McKibban's pregnancy; Planet K's motion for summary judgment should be denied.

### A.    McKibban Presented Direct Evidence of Discrimination.

To withstand a motion for summary judgment, a plaintiff must present sufficient evidence to create a genuine issue of material fact that she was discriminated against by the employer. The starting point is thus for a plaintiff to make out "a prima-facie case of discrimination using either direct or circumstantial evidence." *Etienne*, 778 F.3d at 475. For a plaintiff to survive a defendant's summary judgment motion in an employment-discrimination case based on circumstantial or indirect evidence, the plaintiff must navigate the *McDonnell Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, when a plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* framework doesn't apply. *Etienne,* 778 F.3d 473; *see also Clark v. Champion Nat'l Sec., Inc.,* 952 F.3d 570 (5th Cir. 2020).

Direct evidence, if credited, "proves the fact of intentional discrimination without inference or presumption." *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328-329 (5th Cir. 1994). To constitute direct evidence, a statement or document must show "on its face

that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Clark,* 952 F.3d at 579. To determine if workplace comments are direct evidence, rather than mere stray remarks, courts consider whether the comments are "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne,* 778 F.3d at 476; *see also Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016). In considering these factors, the "ultimate focus is on whether the comments [would] prove, without inference or presumption, that [the forbidden factor] was *a* basis in employment decisions." *Id.* (internal quotations omitted) (emphasis in original).

1.      *Preston's and Rodriguez's statements to McKibban are direct evidence of discrimination.* McKibban presents direct evidence of discrimination in the form of statements made to her by her former supervisors Preston and Rodriguez. *See* Dkt. No. 25 at 16-18. Preston and Rodriguez both told McKibban that her last day would be March 31, 2020, *because* McKibban was pregnant. Dkt. No. 22-1 at 124, 139. If these statements are credited, no inference would be required to conclude that McKibban's pregnancy was at least one basis on which Planet K ended her employment.

There is no merit to Planet K's argument that the statements cannot be direct evidence because they are "hearsay." Planet K, in support of this contention, cites a case from this district and represents it as having held that hearsay "cannot be used as direct evidence." Dkt. No. 29 at 3 (citing *Williams v. Texas Facilities Commission*, No. A-17-CV-689-DAE, 2019 WL 2774333 at *3 (W.D. Tex. July 1, 2019)). *Williams*, however, involved double hearsay. The plaintiff claimed a coworker said a supervisor asked the coworker to falsify documents and called the

11

plaintiff a racial slur. *Id.* The coworker, in his deposition, denied making this statement to the plaintiff about what the supervisor said. *Id.* Here, there is only one layer of hearsay, if the evidence at issue can be accurately characterized as hearsay at all.[1] McKibban testified in her sworn deposition about statements that Preston and Rodriguez made *directly to McKibban.* The Fifth Circuit has repeatedly held that alleged statements from a supervisor to a plaintiff or even a coworker can constitute direct evidence of discrimination. *See Portis,* 34 F.3d at 329 (plaintiff's testimony about a supervisor's statement was direct evidence); *Etienne*, 778 F.3d at 476 (coworker's affidavit about a supervisor's statement was direct evidence).

At this stage, excluding McKibban's deposition testimony as inadmissible hearsay is not warranted, *cf.* Fed. R. Civ. P. 56(c)(2) (competent summary judgment evidence is evidence capable of being "presented in a form that would be admissible in evidence"), when no witnesses have been called to testify at trial. Planet K can raise hearsay objections at trial. Moreover, McKibban's recounting of statements made to her by supervisors can qualify as direct evidence at this juncture, a conclusion only further confirmed by the other evidence, discussed next, corroborating McKibban's statements.

       **2.**     *Preston's statements to McKibban in the termination meeting are direct evidence.* McKibban presents direct evidence of discrimination in the form of recorded statements Preston made during the March 4, 2020, termination meeting. Dkt. No. 25 at 17-18. Preston reiterated in the recording that she had previously told McKibban that her last day would

---

[1] Although the Court takes no position on evidentiary rulings at this time, McKibban does not offer the statements of Preston and Rodriguez for the truth of the matter asserted—*i.e.*, that McKibban's last day would be March 31, or that McKibban was pregnant—but rather to show a connection between the termination and McKibban's pregnancy. *See* Fed. R. Evid. 801(c)(2). Additionally, Preston and Rodriguez were both employees of Planet K at the time McKibban alleges the statements were made. *See* Fed. R. Evid. 801(d)(2). Further, McKibban may decide to testify at trial, and Preston and Rodriguez likewise could be called to testify.

be March 31, and then informed McKibban that she was being terminated early instead. Dkt. No. 25-1 at 7. Although Preston reprimanded McKibban for sitting on the counter and lying down at work, Preston clarified Planet K's primary complaint about McKibban's seating choice: "it's the fact that you're pregnant." *Id.* at 12. Preston also discussed the possibility of McKibban returning to work when she was no longer pregnant, noting that Kleinman, Planet K's owner, was "big on" women spending time with their new babies and that he "normally [made] people wait a year." *Id.* at 11.

Citing the decision in *Clark*, Planet K contends that Preston's recorded comments are not direct evidence because they require drawing an inference to reflect discriminatory intent, and that McKibban has only pointed to Planet K's generalized knowledge of McKibban's pregnancy and its decision to terminate her. Dkt. No. 29 at 5 (citing *Clark,* 952 F.3d at 581). Preston's statements to McKibban are distinguishable from the supervisor's comment in *Clark*. In *Clark,* the plaintiff fell asleep at work due to his diabetes. *Clark,* 952 F.3d at 577. A coworker took a picture of the plaintiff sleeping and emailed it to a supervisor. *Id.* The supervisor responded, "perfect . . . . let him go." *Id.* at 579. Although the supervisor knew of the plaintiff's diabetes, the supervisor's comment did not refer to the forbidden factor. *Id.* at 581. Moreover, the employer's handbook expressly stated that "sleeping or giving the appearance of sleeping at any time while on duty . . . . is considered a terminable offense." *Id.* at 577, n. 12.

Here, Preston referred to McKibban's pregnancy, *i.e.*, the "forbidden factor," repeatedly throughout the meeting. Preston even clarified that Planet K disapproved of McKibban sitting on the counter *because* she was pregnant. Preston further discussed McKibban's return to work when she was no longer pregnant. These statements are direct evidence that McKibban's pregnancy was at least one basis on which Planet K terminated her.

13

3.      *Considering the four factors that inform whether a workplace comment constitutes evidence of discrimination, Preston and Rodriguez's statements are direct evidence.* Planet K does not challenge the first two factors—*i.e.*, that the comments related to a protected characteristic and were proximate in time to the challenged employment decision. *See Etienne,* 778 F.3d at 476; Dkt. No. 29 at 4-5. But Planet K does argue that the third and fourth factors weigh against a direct-evidence finding, contending that the comments were not made by the ultimate decisionmaker or linked to the termination decision. Dkt. No. 29 at 4-5. This argument falls short.

It bears noting that while Planet K treats the *Etienne* four-factor test as a checklist of elements, all of which must be clearly met, this approach is not accurate. While the Court considers all four factors to inform its decision, there is no strict requirement that all factors must be met, and the "ultimate focus is on whether the comments prove, without inference or presumption, that [the forbidden factor] was *a* basis in employment decisions." *Etienne,* 778 F.3d at 476. (internal quotations omitted) (emphasis in original).

**Preston and Rodriguez had "authority over the challenged employment decision."** *See Etienne*, 778 F.3d at 476. Preston and Rodriguez had the authority to tell McKibban that March 31 would be her last day, and Preston held a meeting without any other supervisor present at which she terminated McKibban earlier than the date previously set. Dkt. No. 25-1 at 6.

Planet K argues, in cursory fashion, that because Preston was not the "ultimate decisionmaker," the third prong of the direct-evidence test is not satisfied. *See* Dkt. No. 29 at 4. But it is undisputed that Preston and Rodriguez jointly recommended McKibban's termination to Kleinman and other managers, the "ultimate decisionmakers." Dkt. No. 22 at 8; Dkt. No. 22-1 at

212-213, 273-274. Planet K makes no argument as to why someone with authority to recommend or influence the termination decision should not also be considered a decisionmaker. *See* Dkt. No. 29 at 4.

Planet K's citation to *Clark* in this context also doesn't convince the Court. In *Clark,* the court noted that the supervisor who made an allegedly discriminatory comment was "not the ultimate decisionmaker regarding termination." *See* 952 F.3d at 581. But the ultimate decisionmaker who made the decision did so based on only the picture of the employee sleeping—not the supervisor's comment or recommendation. *See id*. The court discussed no evidence that the supervisor had been involved in recommending termination to the ultimate decisionmaker. *See id.* Because Preston and Rodriguez asserted authority over McKibban's termination and undisputedly recommended McKibban's termination to Kleinman, the third factor weighs in favor of Preston and Rodriguez's comments qualifying as direct evidence.

Moreover, the court in *Clark* noted that if the supervisor's comment had not required an inference to conclude it was discriminatory, it might have passed muster as direct evidence. *Id.* This emphasizes the importance of a court's "ultimate focus" for determining whether workplace comments are direct evidence: "whether the comments prove, without inference or presumption, that [the forbidden factor] was *a* basis in employment decisions." *Etienne,* 778 F.3d at 476 (internal quotations omitted) (emphasis in original).

**Preston and Rodriguez's comments were "related to the challenged employment decision."** *See Etienne*, 778 F.3d at 476. As previously explained, Preston's statements in the termination meeting about McKibban's pregnancy are directly linked to her termination. Also, Preston and Rodriguez's statements to McKibban that March 31 would be her last day because

she was pregnant also provide a direct link. Planet K does not dispute that the "last day" statements meet this aspect of the direct-evidence standard.

>    **B.    Planet K Has Not Carried Its Burden to Show It Would Have Fired McKibban Anyway.**

When a plaintiff invokes direct evidence of discrimination, summary judgment for a defendant is typically not warranted. Things might be different if the defendant could nonetheless carry its summary judgment burden to show "it would have made the same decision absent the evidence of discrimination." *Etienne,* 778 F.3d at 477 (noting in a direct-evidence context that "to prevail on summary judgment, [a defendant] must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination).

Planet K contends it has met this burden because McKibban "repeatedly sat (and stood) on wooden counters and laid down on duty, in violation of [Planet K]'s policies." Dkt. No. 29 at 5. Planet K presents the Flores declaration to support its contention that McKibban "was repeatedly coached not to engage in this conduct, due to the associated safety risks, but continued to do so." *Id.* at 6. Planet K submits that such "policy violations and repeated subordination" would "lead any reasonable jury to conclude that [Planet K] would have made the same decision absent the alleged discrimination." *Id.* (citing *Etienne,* 778 F.3d at 477) (internal quotations omitted). Planet K's argument fails. *See, e.g.*, *Fabela v. Socorro Indep. Sch. Dist*., 329 F.3d 409, 418 (5th Cir. 2003) (noting that "providing unrebutted evidence of a legitimate reason for the adverse employment decision is not sufficient to secure summary judgment under the direct evidence calculus").

First, while Planet K produced a safety pledge that McKibban signed, the pledge is silent on safety rules about sitting on counters. *See* Dkt. No. 22-1 at 168. McKibban contends she was

never provided with any written policies regarding employee safety during her employment, and Planet K has not produced any in this litigation. Dkt. No. 25 at 3. Furthermore, Preston testified she was unaware of any formal or informal written Planet K policies regarding safety. Dkt. No. 22-1 at 344-45. Whether and to what extent there was a safety policy involving the counter that might justify McKibban's termination, in other words, is in dispute.

Second, Planet K presented only disputed evidence that McKibban was previously reprimanded for sitting on the counter. Flores declared that she supervised McKibban, which McKibban disputes. Dkt. No. 22-1 at 28, Dkt. No. 25-1 at 2. Flores also claimed she witnessed McKibban sitting on the wooden counter and lying down on the floor on multiple occasions, that she "instructed [McKibban] to stop" when she saw McKibban sitting on the counter or lying down, and that McKibban complied. Dkt. No. 22-1 at 28. Flores also recalled coaching several other employees to not sit on the counter and that, like McKibban, they all obeyed and got up. *Id.* at 29. But Planet K has not presented any evidence that other employees who sat on a counter were terminated. And notably missing from the Flores declaration is any statement that McKibban was coached not to sit on the counter or lie down "*due to the associated safety risks,*" as Planet K claims. *See* Dkt. No. 29 at 6 (emphasis added); *see also* Dkt. No. 22-1 at 27-30.

Meanwhile, McKibban takes issue with Flores's statements. McKibban contends Flores "never verbally coached [her] or otherwise disciplined" her. Dkt. No. 25-1 at 3. In her deposition, McKibban testified that she was never reprimanded for sitting on the counter by any Planet K employee prior to her termination meeting with Preston. Dkt. No. 22-1 at 119-120. McKibban also testified that she only lied down once during work, and she believed that she was allowed to do so because "there was no one in the store, and [she] was taking [her] break." *Id.* at 135.

McKibban has raised genuine fact issues as to whether Planet K had a safety policy prohibiting employees from sitting on the counter and whether any Planet K employee previously reprimanded McKibban for sitting on the counter before her termination on March 4, 2020. The connection between the safety pledge and McKibban sitting on the wooden counter remains unclear and is not sufficient for Planet K to meet its burden at this stage. *See, e.g.*, *Fabela*, 329 F.3d at 418 ("Creating a triable issue as to these questions . . . is not enough for the [defendant] to prevail on its dispositive motion.").

On Planet K's motion for summary judgment, the Court views the evidence in the light most favorable to McKibban. Doing so, the Court finds that Planet K has failed to meet its burden. *See Etienne,* 778 F.3d at 477; *Febela*, 329 F.3d at 418. Planet K's motion for summary judgment, Dkt. No. 22, should be denied.

## Recommendation

For the reasons explained above, it is recommended that Defendant's Motion for Summary Judgment, Dkt. No. 22, be **DENIED.**

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the

objections with the clerk of the court, and serve the objections on all other parties. A party filing

objections must specifically identify those findings, conclusions, or recommendations to which

objections are being made and the basis for such objections; the district court need not consider

frivolous, conclusory, or general objections. A party's failure to file written objections to the

proposed findings, conclusions, and recommendations contained in this report shall bar the party

from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985);

*Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely

file written objections to the proposed findings, conclusions, and recommendations contained in

this report and recommendation shall bar the aggrieved party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th

Cir. 1996) (en banc).

     **IT IS SO ORDERED**.

     SIGNED this 15th day of August, 2024.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE